UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATE POLISCHAK,<br><br>                Plaintiff,<br><br>    vs<br><br>CARBON COUNTY,<br><br>                Defendant. | Docket No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW**, Kate Polischak ("Plaintiff"), Plaintiff herein, by and through her undersigned counsel of record, and hereby files this Complaint against Carbon County ("Defendant" or "County") and shows this Court as follows:

## NATURE AND PURPOSE

1.      This is a lawsuit brought due to disability discrimination and retaliation in violation of Titles I and II of the Americans with Disabilities Act, as amended by the Americans with Disabilities Act Amendments Act ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 and 42 U.S.C. 2000d-7 ("Section 504") and the Family and Medical Leave Act, 28 U.S.C. Section 2601, et seq. Plaintiff has filed a Charge of Discrimination with the Equal Employment Opportunity Commission under Title I of the Americans with Disabilities Act, as amended by the Americans

with Disabilities Act Amendments Act (hereinafter collectively "ADA") and this Complaint is filed by consent within 90 days of receipt of her Notice of Right to Sue from the United States Department of Justice.

## THE PARTIES

2.    Ms. Polischak is an individual residing in the Middle District of Pennsylvania.

3.    Defendant Carbon County is a County organized under Pennsylvania law and is a local governmental entity providing public services within the boundaries of the Middle District of Pennsylvania. Defendant is an employer under Title I of the ADAAA and was Plaintiff's employer.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction, inter alia, pursuant to 28 U.S.C. § 1331 and 1343, as the case presents a federal question and seeks to address violations of civil rights.

5.    Venue is proper in this Court. Defendant is a local government unit located in this District and the discriminatory acts alleged herein are alleged to have taken place in the Middle District of Pennsylvania, such that venue is proper in this Court.

## STATEMENT OF FACTS

6.    Plaintiff is an employee of Carbon County, although Defendant is not permitting her to return to work.

7.    During the time period of the actions set forth in this Complaint, Defendant employed Plaintiff as a Senior 911 Dispatcher.

8.    Plaintiff, Kate Polischak, was hired by Defendant County on a part-time basis in February 2007.

9.    Plaintiff worked part-time as a 911 Dispatcher until she was hired as a full-time 911 Dispatcher on January 26, 2012.  Ms. Polischak was elevated to be a Senior 911 Dispatcher in April of 2015.

10.    Plaintiff was an exemplary employee as a Senior 911 Dispatcher.

11.    Plaintiff was a victim of a horrific sexual assault on March 17, 2024.

12.    Asa result of the assault, Plaintiff was injured and eventually saw her family doctor for her injuries and Plaintiff was referred to a surgeon for her injuries.

13.    On April 9, 2024, Plaintiff contacted her employment supervisor, Gary Williams, the County 911 Director, on his cell phone after work hours because of the nature of what Plaintiff needed to talk about and disclosed her sexual assault to him.    Plaintiff did this as the surgeon

Plaintiff saw recommended a surgical procedure that would require time off work and Plaintiff wanted to discuss that with her supervisor confidentially.

11.    Plaintiff's Supervisor Gary Williams insisted, against Plaintiff's wishes, that she report the sexual assault to the police.

12.    Plaintiff advised Supervisor Williams that he was the first person she had disclosed the sexual assault, and she wasn't ready to tell the police. Supervisor Williams insisted Plaintiff report it.

13.    Plaintiff's Supervisor Gary Williams contacted the 911 Center himself and spoke to the dispatchers working about having an officer from the Borough where Plaintiff lives to call him.

14.    Plaintiff's Supervisor Gary Williams spoke to a Borough police officer at some point that evening and told them what happened to Plaintiff and shared Plaintiff's name, phone number and address.

15.    Plaintiff was later contacted by a Borough police officer and requested Plaintiff to go to the police station to file a report and Plaintiff felt pressured to do so by her employment supervisor and went to the police station and filed a report.

16.    Plaintiff's Supervisor Gary Williams gave her a day off on April 10, 2024, because she was going to file the police report.

17.    The Plaintiff returned to her regular shift on April 11, 2024 and

she spoke to Gary Williams in his office where she was compelled to relate and relive the horrific event to Williams and Justin Markel, the Assistant 911 Director. Both men at this time questioned Plaintiff and pressured her to press charges against her assailant.

18.    In the late evening of April 11, 2024, the police officer who took Plaintiff's sexual assault report contacted her to let her know that he had been in touch with the man who sexually assaulted her and that the sexual perpetrator had said some troubling things to say about Plaintiff.

19.    On April 12, 2024, Ms. Polischak went to work after having not slept much because of the troubling things she had heard as stated by the assailant.

20.    Plaintiff spoke to Assistant 911 Director Justin Markell, in his office and in the process of speaking with him about events and employment, Plaintiff became emotional and cried.

21.    Ms. Polischak gathered herself and returned to her work console but did cry once more while at her work console but not while performing any tasks that involved contact with the public. She gathered herself ready to address any 911 call but was called into the office of her Supervisor, Gary Williams, where she was advised she was being written up for calling off sick and also being suspended for a call the week

following her sexual assault related to sexual assault injuries.

22.    Plaintiff had previously advised Supervisor Williams for the sexual assault treatment reason of this call off on April 9, 2024, and he stated to Plaintiff that is the County policy regarding call offs.

23.    In conversation at this time with Supervisor Gary Williams and his Assistant Justin Markell, Plaintiff explained to them what the police had told her the night before about what the assailant informed law enforcement and why she was emotional and they both questioned Ms. Polischak again and pressured her to file charges against her assailant telling her that it's foolish not to file charges.

24.    Plaintiff's Supervisor suggested that she could take the rest of the day off and he would have someone come in and cover the rest of Plaintiff's shift and she just needed to make sure to come in and cover her weekend shifts which she agreed to perform.

25.    Plaintiff worked on April 13, 2024. She worked with a very close work friend and confidentially shared that she had been sexually assaulted. A visitor to the Communication Center shared with Plaintiff that she was pressing charges against a Pennsylvania State Police Trooper who she had previously been dating and Plaintiff shared her concerns about her Supervisor pressuring her to press charges against her assailant and her

own safety concerns why she didn't want to press charges.

26.     The Plaintiff asked her fellow employee, and visitor for their confidence and not to tell anyone else what they had talked about as she did not want any of my coworkers to know what had happened to her.

27.     On April 14, 2024, Plaintiff worked with the afore-referenced co-worker.  The Communications Center had several emergency calls from a female that were given to the on-duty officer in one of the local Boroughs. That officer refused to respond to the complaint. The female emergency caller continued to call the Communications Center.

28.     The dispatches from this female caller continued to be dispatched to the Borough Police Officer who refused to respond.  Plaintiff informed the police officer that she would be informing the Communications Center Director on the matter so he could contact the Borough Police Chief.

29.     Polischak did in fact contact Supervisor Williams after that event on a recorded line from her 911 work console and advised him off what happened.  Williams agreed with Plaintiff about the officer's behavior which had recently become a habitual problem and that he would be contacting the police chief. Williams had some inappropriate words for that police officer while we were speaking on the recorded call.

30.    At no time during the above matter was Plaintiff's character ever called into question because she was doing her job taking calls, giving them out, trying to get them handled and advising her direct supervisor of an issue.

31.    On April 15, 2024, Ms. Polischak called Carbon County Human Resources and asked if they could prepare FMLA paperwork that she would pick up the next day by noon before a scheduled medical appointment.

32.    On April 16, 2024, Plaintiff went to Carbon County Human Resources ('HR") where she spoke to Lisa Marks, Assistant HR Director. Ms. Marks gave Plaintiff the packet of FMLA paperwork and spoke about Plaintiff's circumstances. Ms. Marks said to Plaintiff: "If you had gone the ER the night your rape happened, we wouldn't be here now, would we." Ms. Marks further stated: "I was almost sexually assaulted once, whew. Thank goodness that didn't happen."

33.    Plaintiff questioned Ms. Marks about being suspended for calling off due to the injuries from her sexual assault and Plaintiff was informed by Ms. Marks: "Gary is a real stickler for the rules, we wish all the department heads were like him."

34.    Later in the afternoon that day, Plaintiff went to her doctor and

was seen for an unrelated condition but gave them the FMLA paperwork regarding the sexual assault for the purposes of counseling and anything else relating, excluding the surgery at that time which was through another medical professional.  At the time of this visit Plaintiff's doctor found her to be very sick because of an acute health condition that could cause hospitalization or a more life-threatening condition. She was advised to take off work for a few days due to the severity of the symptoms and medications required.

35.    Plaintiff texted Gary Williams that she would be calling off sick for at least the next two days, April 17 and April 18, 2024.

36.    In the late afternoon of April 16, 2024, Ms. Polischak received a call from Samantha M. Ciallella, the County Director of Human Resources. She advised Plaintiff that she was being placed on unpaid administrative leave from the County and that she was not to come to work the following day. Plaintiff questioned Ms. Ciallella why this employment position was being taken and she told Ms. Polischak that she received several written complaints from Plaintiff's coworkers that she had been talking about her sexual assault on the job. Ms. Polischak asked her who wrote these complaints, and Ms. Ciallella stated it wasn't any of Plaintiff's business.

37.    Ms. Ciallella had no response to Ms. Polischak's inquiries

9

except to, amazingly and without foundation, tell Plaintiff that she was also being accused of being suicidal.

38.    Plaintiff did let the Defendant HR Director know that she had never been suicidal, nor had she reported or confessed suicidal ideations to anyone in her professional or personal life.

39.    Defendant incorrectly regarded Plaintiff as suffering from mental illness to a degree she was suicidal.

40.    Defendant HR Director Samantha Ciallella stated to Plaintiff regardless of what Ms. Polischak reported, she was being placed on unpaid leave.

41.    The Plaintiff was informed she would need to seek psychiatric care and get a letter from a mental health provider stating that she is stable enough to do her job so she could come back to work.

42.    On April 30, 2024, the Plaintiff asked HR to provide a letter confirming what the Director had informed her as described above.

43.    Despite the unfounded assertion Plaintiff was suicidal, no one from the Defendant County made any attempt to follow up with Plaintiff and ensure her safety since they clearly felt she was at such a high risk that they needed to remove her from a job she excelled at and loved.

44.    On May 1, 2024, Defendant HR did provide a letter, copy

attached hereto as Exhibit "A", that again accused Plaintiff of being suicidal without proof or foundation supporting Defendant's allegations. Defendant regarded Plaintiff as suffering from a mental illness.

45.    Plaintiff executed a Charge of Discrimination under the Americans with Disabilities Act and promptly filed such Charge with the EEOC. On December 23, 2024, Plaintiff received notice of the right to sue and this Complaint is filed within 90 days thereafter. (See Exhibit "B attached).

## CLAIMS FOR RELIEF

## COUNT ONE:

## DISCRIMINATION BECAUSE OF DISABILITY IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 AND THE AMERICANS WITH DISABILITIES ACT

46.    Plaintiff incorporates by reference the factual statements set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

47.    Defendant County is a "program or activity" which receives federal financial assistance, as defined by Section 504 of the Rehabilitation Act, as amended by the Grove City Amendments of 1986.

48.    Defendant County is a governmental entity as defined by Title II of the ADAAA.

49.    Defendant County is an employer as defined by Title I of the ADAAA and was Plaintiff's employer as defined therein.

50.    Plaintiff is an individual regarded by her employer to be an individual with a disability as defined in the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, in that (A) she was regarded as having a psychological impairment that substantially limits one or more major life activities; (B) has a record of such an impairment; and/or (C) was regarded by Defendant as having such an impairment. The Plaintiff was, with or without reasonable accommodation, capable of performing the essential functions of her job.

51.    Defendant County discriminated against Plaintiff based upon her disability in the following ways:

    a. by requiring Plaintiff to provide psychiatric clearance under threat of termination;

    b. by refusing to return Plaintiff to work since she always possessed fitness for duty; and

    c. by continuing to threaten Plaintiff with termination when she has sought to return to work.

52.    Persons employed by the County who had the authority and responsibility to investigate and take remedial action to end this

discriminatory treatment had actual knowledge of the discriminatory treatment directed toward Plaintiff yet failed and refused to act to prevent or remedy such discrimination.

53.    Instead, Defendant County allowed Plaintiff to be the subject of disability discrimination.

54.    As a consequence of Defendant County's actions and failures to act, Plaintiff has suffered mental and emotional distress.

55.    Defendant County's conduct, as alleged herein, was undertaken with the intent to discriminate or with deliberate indifference to Plaintiff's federally protected right to be free from disability discrimination and harassment, such that Defendant County may be held liable pursuant to Section 504.

56.    Defendant County's actions cost Plaintiff her position, sick leave and FMLA leave which she would not otherwise have been required to use, as well as the entitlement to continued employment.

57.    Plaintiff is entitled to the restoration of her accumulated leave balances from Defendant County.

58.    Plaintiff is entitled to recover from Defendant County compensatory damages, attorneys' and witness' fees, costs, and expenses of litigation.

59.    All conditions precedent to bringing this Count have been completed, performed and/or waived.

## COUNT TWO:

### DISCRIMINATION BECAUSE OF PROTECTED ACTIVITY (RETALIATION) IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973 AND THE AMERICANS WITH DISABILITIES ACT

60.    Plaintiff incorporates herein by reference the factual statements set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

61.    Defendant County is a "program or activity" which receives federal financial assistance, as defined by Section 504 of the Rehabilitation Act, as amended by the Grove City Amendments of 1986.

62.    Defendant County is a governmental entity as defined by Title II of the ADAAA.

63.    Defendant County is an employer as defined by Title I of the ADAAA and was Plaintiff's employer as defined therein.

64.    On numerous occasions, as set forth above, Plaintiff engaged in protected activity, including seeking to return to work, compelled to unreasonably receive a medical certification of her fitness for duty; and retaining counsel to represent her in enforcing her rights.

65.    Defendant County discriminated against Plaintiff based upon

her protected activity (i.e., retaliatory discrimination):

    a. by refusing to permit Plaintiff to return to work in her then available position;

    b. by threatening to terminate Plaintiff because of her protected activities in seeking to return to work and retaining counsel.

66.    Persons employed by Defendant County who had the authority and responsibility to investigate and take remedial action to prevent or put a stop to the retaliatory actions set forth above had actual knowledge of the retaliatory treatment towards Plaintiff.

67.    Instead, Defendant County allowed Plaintiff to be the subject of discrimination because of her protected activity, in violation of Section 504 and Titles I and II of the Americans with Disabilities Act and 42 U.S.C. Section 12203.

68.    As a consequence of Defendant County's actions and failures to act, Plaintiff has suffered mental and emotional distress.

69.    Defendant County's conduct, as alleged herein, was undertaken with the intent of retaliation or with deliberate indifference to Plaintiff's federally protected right to be free from unlawful retaliation, such that Defendant County may be held liable pursuant to Section 504.

70.    Defendant County's actions cost Plaintiff back wages, health

and other benefits, as well as the entitlement to continued employment.

71.    Plaintiff is entitled to recover from Defendant County her lost wages.

72.    Plaintiff is entitled to recover from Defendant County compensatory damages, attorneys' and witness' fees, costs, and expenses of litigation.

73.    All conditions precedent to bringing this Count have been completed, performed and/or waived.

## COUNT THREE:

## INTERFERENCE AND RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

74.    Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as if fully set forth .

75.    Defendant is an employer as defined by the Family and Medical Leave Act, 29 U.S.C. Section 2601, et seq.

76.    Plaintiff was, at the time of her Family and Medical Leave in January of 2017 and thereafter, an eligible employee as defined by 29 U.S.C. Section 2611.

77.    As a result of Defendant's actions in forcing Plaintiff to be labled suicidal, Plaintiff was forced to take leave protected by the Family and Medical Leave Act.

78.   Defendant unreasonable certification that Plaintiff was fit to return to work without restriction, Defendant did not reinstate Plaintiff but instead threatened her with termination and forced her to remain on leave.

79.   Plaintiff is therefore entitled to declaratory and injunctive relief – as well as any lost wages and liquidated damages which ultimately flow from Defendant's actions, should Defendant follow through with its threat of termination – reinstating her to the position she had at the time of her leave. All conditions precedent to bringing this Count have been completed, performed and/or waived.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

a. That this Court declare and adjudge Defendant County to have engaged in unlawful employment practices in violation of the ADAAA, Section 504 of the Rehabilitation Act and the FMLA;

b. That this Court reinstate Plaintiff to her employment; reinstate her into the position of Senior 911 Dispatcher and enjoin Defendant permanently from engaging in unlawful employment practices in violation of Section 504, the ADA, and the FMLA;

c. That this Court award compensatory damages to Plaintiff against Defendant under Section 504 and the ADA;

d. That this Court award back pay, liquidated damages, and injunctive and declaratory relief to Plaintiff against Defendant under Section 504, the ADA, and the FMLA;

e. That Plaintiff be given judgment against Defendant on all counts, in an amount to be determined at that Plaintiff receive an award of nominal damages;

f. That Plaintiff recover her attorneys' fees and costs from Defendant incurred in bringing this action.

g. That a jury trial be had as to all issues in this Complaint; and

h. For all such other and further relief as is deemed just and proper by this Court.

Respectfully submitted,

Dated: <u>February 20, 2025</u>    LAW OFFICE OF HARRY T. COLEMAN

By: _____
    Harry T. Coleman, Esquire
    Attorney ID.:  49137
    41 N. Main Street
    3rd Floor, Suite 316
    Carbondale, PA  18407
    570-282-7440
    570-282-7606, fax
    Harry@harrycolemanlaw.com

By: _____
    Owen M. Coleman, Esquire
    Attorney ID.: 327826
    41 N. Main Street

3rd Floor, Suite 316
Carbondale, PA  18407
570-282-7440
570-282-7606, fax
Owen@harrycolemanlaw.com

*Attorneys for Plaintiff*